Nicholsoh, C. J.,
delivered the opinion of the Court.
This is an action of covenant tried in the Circuit Court of Cheatham county. Pardue obtained a judgment against Barnes as administrator of J. G. Smith, *357 for about $525, on which execution was issued and returned nulla bona. He then sued Barnes and his securities on Barnes’s bond as administrator, charging a devastavit in this, that he procured an order of sale of two slaves to be made by the County- Court to pay debts, and that he sold the slaves for about $1,500, and received the money, but has wasted the same.
Upon the trial of the cause, under the charge of the Court, the jury found against Barnes in the sum of about $650, for which judgment was given, but they found in favor of Barnes’s sureties on his administration bond. It is not disputed that Barnes, as administrator, obtained an order to sell the two slaves to pay debts, that he was appointed to sell, and did sell, them, and receive the money; but it is insisted for his sureties that the proceeds of the sale of the slaves were not assets in his hands as administrator, for the wasting of which they can be made liable.
The first ground on which they rely is, that in January, 1860, J. G. Smith conveyed the two slaves, with, other property, to Barnes as trustee, to secure the payment of specified debts; that when he died soon after making the deed, the title of the property was not in him, but was in the trustee, and therefore that Barnes had no right as administrator to take the property as assets of his intestate. This conclusion is irresistible, if there is nothing in the case showing either that the trustee and beneficiaries under the deed never accepted its provisions, or if they did, that its benefits had been waived.
*358 The trust deed provided that if the debts provided for were not paid by the 10th of January, 1861, the trustee was then to take possession of the property and sell to satisfy the debts. It appears that Smith, the grantor in the deed, died before June, 1860, as we see that on the 4th of June, 1860, Barnes was appointed and qualified as his administrator. It appears also that Barnes, as administrator, took immediate possession of the property embraced in the trust, selling the mules and horses, and returning them in his inventory and account of sales as assets of the estate. It appears also, that immediately after his appointment as administrator, to-wit: as early as the 15th of June, 1860, Barnes filed his bill or petition in the County Court, to obtain an order to sell land and the two slaves included in the deed of trust, for the payment of debts; and that the two slaves were sold on the 1st of September, 1860, for about $1,500 in cash.
Upon his examination as a witness, Barnes proves that he never qualified as trustee under the trust deed, and that none of the creditors provided for . therein had ever claimed the benefits secured to them by its provisions. He produced vouchers for debts paid, amounting to about $1,500. This evidence was given about eight or nine years after the qualification of Barnes as administrator. From these facts we think it may be reasonably deduced that the creditors under the trust deed waived their rights under it and allowed Barnes to proceed as administrator to sell the negroes, as already shown, for cash, whereby their debts would be satisfied much sooner than they *359 would have been if they had relied on a foreclosure of the deed. We think it may also be inferred that the money received for the slaves was used in satisfying the debts in the trust deed, amounting to seven or eight hundred dollars, and leaving in Barnes’s hands about that amount, which was subject to be applied to other debts of the estate.
If we are correct in the inferences which we draw from the facts, it follows that if the .surplus in the hands of Barnes, after satisfying the debts secured in the trust deed, amounting to seven or eight hundred dollars, was in his hands as administrator proper, then his sureties would be responsible for its waste.
This brings us to the second ground on which the sureties resist responsibility.
It is insisted for the sureties that when the slaves were sold by Barnes under the order of the County Court, he received the proceeds of the sale in the capacity of special commissioner, by appointment of the County Court, and not as administrator, by virtue of his appointment as such. It was settled for many years before negroes ceased to be property, that upon the death of an intestate the legal title to his slaves descended to his distributees, subject only to the right of the administrator to apply to court for an order of sale for payment of the debts, or for distribution.
This was the construction placed upon the act of ■1827, when Smith died, and when Barnes was appointed his administrator, and executed bond with the other defendants as his sureties. The presumption is that the bond was executed with an eye to the law as it then *360 existed, and bence that it was not intended to cover the value of the slaves, which were not then considered assets in the hands of the administrator.
The law was so declared in the case of Reeves v. Steele, 2 Head., 647. In that case the Court said there was no necessity for the administrator to apply to the County Court for an order of sale for partition, because the parties were all sui juris. But still, the Court said “that course was adopted and we have to consider its effect as to the responsibility of the sureties for the administrator.” The opinion of the Court therefore, was an adjudication, and not a dietwm. In that case the Court said: “ The decree for sale was made by the County Court, empowering Campbell, the administrator, to make the sale, and pay out the proceeds to those entitled who are plaintiffs in this action. No bond was ever given by him, and only a part of the proceeds paid out, and the balance lost by his insolvency, as before stated. Upon whom shall the loss fall is now the question presented?”
This is identically the case now before us, and the following remarks of the Court are directly applicable:
“The bond of his sureties as administrator, only binds them for the faithful performance of his duties in that capacity; not for anything that might be done by him under an appointment by the Court for a different purpose. The sale of the slaves of the estate was not embraced in his functions as administrator, even if sold for distribution. It was not contemplated by his sureties that any- fund would come into his hands of that kind.
*361 They knew that the law forbade him to convert them into money. If, then, the Court by a distinct appointment clothed him with this power, it was exercised in his new character of commissioner, and not as administrator. If the Court failed to secure the fund thus to come into his hands under the decree, it is not the fault of his sureties as administrator, and the loss should not fall on them.”
We are therefore of opinion that there is no error in the judgment below, and we affirm it.